IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **NIXALIZ MESTRE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. _____** |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| **SEPHORA USA, INC.,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

# COMPLAINT

Plaintiff **Nixaliz Mestre** ("Plaintiff" or "Mestre") brings this civil action for relief and damages against Defendant **Sephora U.S.A. Inc.** ("Defendant" or "Sephora" or "Sephora USA") based on the following allegations and causes of action.

## NATURE OF THE ACTION

1.  This action to correct unlawful employment practices by Defendant Sephora USA arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e *et seq.*, and 42 U.S.C.A. § 1981 ("Section 1981"). Plaintiff Mestre, who is Hispanic, managed a Sephora branch store in a suburb of Atlanta,

1

Georgia. Mestre alleges that she was terminated by Sephora for resisting pressure from company officials to tailor her hiring practices to the store's demographic customer base, in violation of federal antidiscrimination law.

2. Mestre seeks economic damages, including back pay, noneconomic compensatory damages, and punitive damages, as well as attorneys' fees and costs of litigation.

## THE PARTIES

3. Mestre is a resident of Forsyth County, Georgia. During the time of the events alleged in this complaint, she was employed at a Sephora store in Alpharetta, Georgia.

4. Sephora USA is one of the largest domestic cosmetic and beauty stores. It is subject to liability under Title VII in that it is engaged in an industry affecting commerce and has had more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. 42 U.S.C.A. § 2000e(b).

5. Sephora USA is subject to liability under Section 1981, which encompasses economic relationships including at-will employment.

## SUBJECT MATTER JURISDICTION AND VENUE

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

7. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2) because Defendant resides in and conducts business in the district, and the alleged unlawful acts occurred in, this judicial district and division.

## PERSONAL JURISDICTION

8. Sephora USA may be served with proper process through its registered agent on record with the Georgia Secretary of State: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Mestre filed a charge of race discrimination and retaliation against Sephora USA with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2023-09176, received by the EEOC on June 28, 2023. A copy is attached as Exhibit A.

10. Mestre subsequently received a Right-to-Sue letter from the EEOC on February 1, 2024. A copy is attached as Exhibit B.

11. Mestre timely filed her Title VII claims within 90 days of receiving her Right-to-Sue letter.

## FACTUAL ALLEGATIONS

12. In 2019, after a five-year stint with Sephora USA, Mestre was promoted to the role of store manager, and in January 2020, Mestre was transferred to the Sephora store located at the Avalon Mall in Alpharetta, Georgia.

13. Based on foot traffic and online data maintained by the company, Sephora USA estimates that the Avalon store services a clientele that is 96.3% white.

14. Mestre's District Manager Brian Mahan advised Mestre during her transition to Avalon that Sephora USA practices a hiring strategy that aims to match its sales associates with the demographic profile of the customer base at specific locations.

15. The effect of Sephora USA's racial matching is defended within the company as a tool to enhance the "customer experience," but it rests on the assumption that individuals of one race share a unique affinity with their own racial cohort, a notion that is both pernicious and illegal.

16. Sephora managers who resist tailoring their hiring to racial ethnicity face consequences. Their capacity to make unilateral hiring decisions at their store

is often curtailed; in some instances, Mahan insists on joining in job interviews and exercises veto power over selections, a sharp contrast to the usual latitude Sephora affords its managers to assemble their own teams.

17. Notwithstanding Sephora's fixation on race, Mestre's hiring decisions prioritized qualifications and experience in the beauty industry. Mestre's merit-based approach produced a sales force that was diverse, including African-Americans, Hispanics, East Indians, persons of Arabic descent, and Caucasians.

18. In 2021, Mestre expressed an interest in being designated a training manager, a role that involves coaching of new manager hires and is seen as a stepping stone to company leadership jobs. Mestre was passed over for two openings, with white females being selected instead, although Mestre had been assigned on several occasions to informally mentor new managers.

19. In July 2022, Mahan informed Mestre that she was the subject of a complaint by a white sales employee at Sephora Avalon alleging that there were "morale" issues among employees and that certain workers felt marginalized.

20. Sephora's human resources ("HR") division investigated the complaint. In the course of their investigation, the HR team pointedly ignored most

of the racial minorities within the workforce at Sephora Avalon and focused its interviews on white employees.

21. Later in 2022, a white assistant store manager was transferred to Sephora Avalon without any input from Mestre, a departure from the company's customary practice of giving managers deference to hire the leadership team of their choice.

22. In February 2023, Mestre received an annual evaluation that marked the worst of her management career at Sephora, despite the fact that Mestre's store was one of the highest-selling Sephora branches in the Atlanta metro area.

23. On April 26, 2023, Mestre was placed on a performance improvement plan ("PIP"). One of the grounds cited in the PIP critiqued Mestre for not availing herself of opportunities to recruit "all demographics to work within her building."

24. At the time of the PIP, 17 of the employees at Avalon Sephora were non-white, while nine were Caucasian.

25. On May 15, 2023, Mestre was terminated. The purported reason was Mestre's failure to discipline an employee who violated Sephora policies against pursuit of shoplifters. Whether or not the employee violated policy, it is highly unusual for managers at Sephora to be terminated for a first offense that does not involve harassment or misfeasance. The recognized protocol at Sephora is to

counsel managers or expose them to coaching on policies rather than resort to immediate firing.

26. Mestre was replaced by a white female.

27. In addition to the lost wages she incurred, Mestre's abrupt termination damaged her reputation within the beauty and cosmetics industry in the metropolitan Atlanta area, which continues to constrain her career prospects and earning potential.

## CAUSES OF ACTION

## COUNT I
### (Retaliatory mistreatment in violation of Title VII, 42 U.S.C.A. § 2000e-3(a))

28. Plaintiff incorporates by reference the factual allegations in paragraphs 1-27 of the complaint, as if fully set forth herein.

29. Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964 by refusing to comply with Sephora USA's race-conscious hiring policies, which are unlawful and constitute race discrimination.

30. Plaintiff experienced retaliatory mistreatment based on her opposition to discrimination, in the form of denied promotional opportunities, an unwarranted negative performance review, and her subsequent termination.

31.     Sephora's retaliatory conduct might have dissuaded a reasonable employee from engaging in protected activity.

32.     As a result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay, front pay, and the loss of benefits; and noneconomic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT II

### (Retaliatory termination in violation of 42 U.S.C.A. § 1981)

33.     Plaintiff incorporates by reference the factual allegations in paragraphs 1-27 of the complaint, as if fully set forth herein.

34.     Plaintiff engaged in activity protected under Section 1981 by refusing to comply with Sephora USA's race-conscious hiring policies, which are unlawful and constitute race discrimination.

35.     But for Plaintiff's protected activity, she would not have been terminated by Sephora USA.

36.     As a result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay, front pay, and the loss of benefits; and noneconomic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

# COUNT III

## (Motivating factor race discrimination, in violation of 42 U.S.C.A. § 2000e-2(m))

37. Plaintiff incorporates by reference the factual allegations in paragraphs 1-27 of the complaint, as if fully set forth herein.

38. Plaintiff's refusal to implement racially discriminatory hiring practices was a basis for her termination by Sephora USA. Therefore, Sephora USA impermissibly considered race as a motivating factor in its termination of Plaintiff, even though other factors may have also motivated the practice.

39. As a result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay, front pay, and the loss of benefits; and noneconomic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

# PRAYER FOR RELIEF

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits;

B. Compensatory damages to the extent allowed by law;

C. Punitive damages;

D. Attorneys' fees and costs of litigation;

E. Prejudgment and post-judgment interest at the highest lawful rate; and

F. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted the 1st day of May 2024.

           **HKM Employment Attorneys LLP**

           *s/Artur Davis*
           Artur Davis[1]
           ASB-3672-D56A
           2024 3rd Ave. North, Suite 212
           Birmingham, Alabama 35203
           Direct: 205-881-0935
           adavis@hkm.com

           *s/Jermaine "Jay" Walker*
           Jermaine "Jay" Walker
           GA Bar No. 142044
           3344 Peachtree Rd. NE, Suite 800
           Office No. #35
           Atlanta, Georgia 30326
           Direct: 404-301-4020
           jwalker@hkm.com

           **Attorneys for Plaintiff Nixaliz Mestre**

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.